ORDERED.

**Dated:  December 07, 2020**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WILLIAM W. COLE, JR., | ) | Case No. 6:15-bk-06458-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| LORI PATTON, | ) | |
| AS CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 6:17-ap-00112-KSJ |
| | ) | |
| WILLIAM W. COLE, JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER
## GRANTING TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Two weeks after Debtor, William W. Cole, Jr., was notified he was in default

under a large personal guaranty, a limited partnership Cole indirectly owned, Cole of

Orlando Limited Partnership, transferred nearly $4 million to joint accounts held by Cole and his wife as tenants by the entireties. Plaintiff, the Chapter 7 Trustee, seeks partial summary judgment concluding Cole's interest in the transfers are avoidable as actual or constructively fraudulent transfers.[1] Terre Cole, the Debtor's wife and a Defendant in this adversary proceeding, conversely seeks partial summary judgment that the Trustee's fraudulent transfer claim involving a separate transfer of 3,000 shares of Google stock to Mrs. Cole is time barred.[2] Finding no factual issues, the Court will grant partial summary judgment for the Trustee but will deny the Defendant's motion due to material factual disputes that preclude judgment as a matter of law.

## I.    Undisputed Facts

In 2002, Cole and his wife formed Cole of Orlando Limited Partnership, a Nevada limited partnership, to hold the couple's investments.[3] Cole and his wife each owned a 49.5% interest in Cole of Orlando through their respective revocable trusts.[4] Cole of Orlando's 1% general partnership interest was held by W&T Cole, LLC, also

---

[1] *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44; *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70; *Def.'s Resp. to Mot. for Summ. J. & Cross Mot. for Summ. J.*, Adv. Doc. No. 74; *Trustee's Reply in Support of Mot. For Partial Summ. J.*, Adv. Doc. No. 80; *Trustee's Resp. to Cross Mot. for Summ. J.*, Adv. Doc. No. 81; *Def.'s Reply to Trustee's Resp. to Cross Mot. for Summ. J.*, Adv. Doc. No. 91.

[2] *Def.'s Resp. to Mot. for Summ. J. & Cross Mot. for Summ. J.*, Adv. Doc. No. 74 at 14 – 16; *Trustee's Resp. to Cross Mot. for Summ. J.*, Adv. Doc. No. 81, at 3 – 5; *Def.'s Reply to Trustee's Resp. to Cross Mot. for Summ. J.*, Adv. Doc. No. 91, at 2 – 4.

[3] *Suppl. Aff. of William W. Cole, Jr.*, Adv. Doc. No. 70, Ex. A, ¶ 4.

[4] *Id.* at ¶ 5. Cole's limited partnership interest was held by the William W. Cole, Jr. Revocable Trust dated September 18, 1997, as amended and restated June 5, 2002; his wife's limited partnership interest was held by the Theresa Laura Cole Revocable Trust dated September 18, 1997, as amended and restated June 5, 2002. *Id.*

a Nevada business entity, which Cole and his wife owned as tenants by the entireties.[5] Over the years, Cole of Orlando held individual stocks, bonds, and brokerage accounts, including accounts at Charles Schwab Investments, Prager Sealy & Co., and Goldman Sachs.[6]

In 2008, Cole, who was a sophisticated real estate developer and investor, entered into a Memorandum Agreement Re: Revolving Lines of Credit (the "Memorandum Agreement") with PRN Real Estate & Investments, Ltd ("PRN").[7] Under the Memorandum Agreement, Cole personally guaranteed more than $10.5 million in existing debt, and roughly $11.5 million in new debt.[8] The debt under the Memorandum Agreement matured on November 25, 2011.[9] On December 15, 2011, PRN notified Cole he was in default under the Memorandum Agreement.[10] When Cole received the default notice, he owed PRN more than $12 million on his personal guaranty.[11]

---

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 11.

[7] *Compl. to Avoid Fraudulent Transfers, For Turnover of Assets of the Estate, and to Avoid Unauthorized Post-Petition Transfers*, Adv. Doc. No. 1, Ex. A; *Answer of William W. Cole, Jr.*, Adv. Doc. No. 7, ¶ 12. PRN is owned by Nancy Rossman and her sisters, Paula and Ruth—PRN. Nancy Rossman is the primary representative for PRN.

[8] *Compl.*, Adv. Doc. No. 1, ¶ 12 & Ex. A, § 4.1. Cole's wife was not party to the Memorandum Agreement and, according to Cole, did not have any obligation to Rossman or PRN. *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶ 27.

[9] *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, Adv. Doc. No. 44, Ex. E.

[10] *Id.*

[11] *Id.*; *PRN Real Estate & Investments, Ltd. v. Cole*, Adv. No. 6:15-ap-00168-KSJ, Adv. Doc. No. 412, 57:25 – 58:4.

Two weeks later, Cole of Orlando transferred a little more than $2 million to a joint account held by Cole and his wife as tenants by the entireties.[12] Then, over the next two weeks, Cole of Orlando transferred another $1.9 million to joint accounts held by Cole and his wife as tenants by the entireties.[13] In all, Cole of Orlando transferred $3,968,379.56 to Cole and his wife's joint TBE accounts between December 28, 2011 and January 11, 2012.[14] By early 2012, Cole of Orlando had distributed its remaining assets, except for shares of stock in Seaside Bank and a bank account with nominal funds.[15]

On June 2, 2012, just five months after the final transfer from Cole of Orlando to Cole and his wife, Cole signed a settlement agreement with PRN (the "Settlement Agreement").[16] Under the Settlement Agreement, PRN agreed to forbear collecting on the amounts due under the Memorandum Agreement if Cole paid a percentage of his

---

[12] *Compl.*, Adv. Doc. No. 1, ¶ 15(a); *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, at 7(a) & Ex. F; *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at ¶ 10; *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶ 14.

[13] *Compl.*, Adv. Doc. No. 1, ¶ 15(b) – (e); *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, at 7(b) – (e) & Exs. F, G & H; *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at ¶ 10; *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶ 14.

[14] *Compl.*, Adv. Doc. No. 1, ¶ 15(a) – (e); *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, at 7(b) – (e) & Exs. F, G & H; *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at ¶ 10; *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶ 14.

[15] According to Cole, the Seaside Bank stock, which he had forgotten Cole of Orlando was holding, was unmarketable. *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶ 14.

[16] *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, Ex. J.

future earnings to PRN.[17] Cole acknowledged that the amounts due under the Memorandum Agreement totaled more than $30 million.[18]

Cole eventually defaulted under the Settlement Agreement. PRN then sued Cole in state court in 2014. On July 27, 2015, Cole filed this Chapter 7 bankruptcy case. The Chapter 7 Trustee filed this proceeding to avoid alleged fraudulent transfers, including the nearly $4 million in transfers from Cole of Orlando to Cole and his wife.

## II.    Trustee's Motion for Partial Summary Judgment

In her adversary complaint, the Trustee alleges three theories for avoiding and recovering the nearly $4 million in transfers to Cole and his wife. In Count 1, the Trustee alleges the transfers are *actual* fraudulent transfers intentionally made to hinder, delay, or defraud Cole's creditors, including PRN, and therefore avoidable under § 726.105(1)(a) of the Florida Statutes.[19] In Counts 2 and 3, the Trustee alleges the same transfers are constructively fraudulent transfers avoidable under §§ 726.105(1)(b) and 726.106 of the Florida Statutes because Cole did not receive reasonably equivalent value for the transfers and, when the transfers were made, Cole was insolvent or intended to incur debts beyond his ability to pay.[20] In Count 4, the

---

[17] *Id.*

[18] *Id.* In the fifth recital to the Settlement Agreement, Cole acknowledged that loan schedules attached to the Settlement Agreement were accurate. *Id.* at 1.

[19] *Compl.*, Adv. Doc. No. 1, ¶¶ 29 – 33.

[20] *Id.* at ¶¶ 34 – 41.

Trustee alleges the transfers separately are avoidable under § 222.30 of the Florida Statutes, because Cole fraudulently converted non-exempt assets into exempt assets.[21]

In the Trustee's Motion for Partial Summary Judgment, she argues few factual disputes exist. Cole admits nearly $4 million was transferred from Cole of Orlando to joint accounts held by him and his wife as tenants by the entireties. Because of other rulings or actions, the Trustee argues sufficient "badges of fraud" are established showing Cole made the transfers actually intending to hinder, delay, or defraud PRN. For example, the transfers were made to Cole and his wife after Cole received a default notice from PRN when he failed to pay PRN around $12 million due under the Memorandum Agreement; that Cole retained control of the monies after the transfers; that he was insolvent at the time of the transfers; and that the funds were transferred from non-exempt accounts into exempt TBE accounts to prevent creditors, like PRN, from reaching the monies.

Cole concedes the transfers occurred but argues the Trustee still is not entitled to partial summary judgment as a matter of law for five reasons.[22] First, Cole says all the Trustee's claims, predicated on him being the transferor, fail because the transferor was Cole of Orlando, not him.[23] Second, although Cole does not address the badges of fraud, he does offer benign countervailing reasons for the transfers and for winding

---

[21] *Id.* at ¶¶ 42 – 45.

[22] *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at 5 – 13.

[23] *Id.* at 5 – 7.

down Cole of Orlando[24] Third, Cole argues the transfers were for *more* than reasonably equivalent value because assets available to his creditors actually increased—as opposed to decreased—after the transfers.[25] Fourth, Cole argues the Trustee lacks standing because PRN does not qualify as a "triggering" creditor who could have avoided the transfers.[26] Fifth, Cole says he did not convert non-exempt assets into exempt assets; the assets were exempt and remain exempt from creditor claims.[27] Each argument is rejected.

### A.    Cole was the transferor.

As a threshold matter, Cole argues that the Trustee cannot prevail on any of her fraudulent transfer claims because Cole of Orlando—not Cole—was the transferor.[28] Cole acknowledges he directed the winding up of Cole of Orlando and ordered the transfer of nearly $4 million.[29] But Cole argues that any actions he took to wind up Cole of Orlando, including making the transfers, were done in his capacity as co-president of W&T Cole, Cole of Orlando's 1% general partner.[30] The Trustee

---

[24] *Id.* at Ex. A, ¶¶ 4 & 9 – 12.

[25] *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, 7 – 8.

[26] *Id.* at 9 – 10.

[27] *Id.* at 12 – 13.

[28] *Id.* at 5 – 7.

[29] *Id.* at Ex. A, ¶¶ 15, 17, 18 & 20.

[30] *Id.* at ¶¶ 8, 17, 18 & 20.

disagrees, arguing that Cole is the legal transferor under the "control" test adopted by the Eleventh Circuit in *In re Chase & Sanborn Corp.*[31]

There, the debtor, a defunct corporation, was reopened to launder funds.[32] Once the debtor corporation was reinstated, it reopened a defunct bank account to receive deposit of non-debtor funds; the debtor transferred the money to a third party; and then the debtor closed its account.[33] The trustee sued to avoid the transfer to the third party as a fraudulent transfer. There, like here, the issue "was not whether the property went *to* the alleged transferee, but whether it came *from* the debtor."[34]

The Eleventh Circuit held that the debtor was not the transferor because, even though the funds had been deposited into its bank account, the debtor did not have control over them or their transfer.[35] To decide whether the debtor controlled the transferred funds, the Eleventh Circuit adopted the "control test, a "flexible, pragmatic" test requiring courts to step back and evaluate a transaction in its entirety:[36]

> In determining whether the debtor had control of funds transferred to a noncreditor, the court must look beyond the particular transfers in question to the entire circumstance of the transactions."[37]

---

[31] *Reply in Support of Mot. for Summ. J.*, Adv. Doc. No. 80, ¶ 11 & n.8 (citing *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1181 (11th Cir. 1987)).

[32] *Chase & Sanborn*, 813 F.2d at 1179.

[33] *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir. 1988) (discussing its earlier decision in *Chase & Sanborn*, 813 F.2d at 1179 – 80).

[34] *Chase & Sanborn*, 848 F.2d at 1199 (citing *Chase & Sanborn*, 813 F.2d at 1181 – 82).

[35] *Id.* (citing *Chase & Sanborn*, 813 F.2d at 1180).

[36] *Id.* (citing *Chase & Sanborn*, 813 F.2d at 1181 – 82).

[37] *Chase & Sanborn*, 813 F.2d at 1181 – 82.

Applying the "control" test here, there is no question the transferred funds belonged to Cole. Recall Cole of Orlando was formed primarily to invest in stocks, bonds, securities, and other intangible assets on behalf of Cole and his wife.[38] Cole held the family's wealth in Cole of Orlando. When Cole decided to wind down Cole of Orlando, the partnership's assets were not distributed to Cole's and his wife's revocable trusts; they were transferred directly to accounts directly owned by Cole and his wife as tenants by the entireties. Cole made all of these decisions. He was in control of both Cole of Orlando and W & T Cole. Stepping back and looking at all circumstances, I conclude Cole had control over the transferred funds and is deemed the legal transferor.

### B. Cole transferred the nearly $4 million actually intending to hinder, delay, and defraud PRN.

Because debtors rarely admit that they intended to hinder, delay, or defraud their creditors, and actual intent is otherwise hard to prove, courts traditionally look to the "badges of fraud" to determine the existence of actual intent.[39] The "badges of fraud" are codified at § 726.105 of the Florida Statutes.[40] "While a single badge of

---

[38] *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶¶ 8, 17, 18 & 20.

[39] *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 380 (Bankr. M.D. Fla. 2014); *Fifth Third Bank v. Global Workforce Int'l, Inc.*, 2018 WL 7820724, at *2 (S.D. Fla. July 31, 2018).

[40] § 726.105(2)(a) – (k), Fla. Stat. (listing the "badges of fraud"). The "badges of fraud" include: the transfer or obligation was to an insider; the debtor retained possession or control of the property transferred after the transfer; the transfer or obligation was disclosed or concealed; before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; the transfer was of substantially all the debtor's assets; the debtor absconded; the debtor removed or concealed assets; the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; the debtor was insolvent or became

fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance ... several of them when considered together may afford a basis to infer fraud."[41]

Here, several badges of fraud exist and warrant a finding of actual fraud. First, the transfer was to an insider. Here, the funds were transferred to the primary owners of the corporation—Cole and his wife as tenants by the entireties. Second, Cole retained control of the monies after the transfer. The funds were deposited into joint TBE accounts with Mrs. Cole. Typically, TBE accounts are exempt from claims of creditors, such as PRN, unless a creditor has joint claims against both the husband and the wife. Third, the transfers occurred shortly after PRN gave Cole official notice he was in default under his personal guaranty and might pursue collection directly against him. So the transfer was made in anticipation of imminent legal collection activity. Fourth, Cole was insolvent at the time of the transfer. Cole does not dispute these badges of fraud exist or that the transfers were made with actual intent to hinder, delay, or defraud PRN.[42]

---

insolvent shortly after the transfer was made or the obligation was incurred; the transfer occurred shortly before or shortly after a substantial debt was incurred; the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor). *Id.*

[41] *Cuthill v. Greenmark, LLC (In re World Vision Ent., Inc.)*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002) (quoting *Bakst v. Levenson (In re Goldberg)*, 229 B.R. 877, 885 (Bankr. S.D. Fla. 1998)).

[42] *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at 5 – 13; *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A.

Instead Cole offers benign reasons for winding down Cole of Orlando and transferring its assets.[43] Here is the explanation: Cole of Orlando was formed under Nevada law to avoid a property tax imposed by Florida law on various forms of intangible personal property.[44] Florida later repealed this intangible tax. So, in 2010, Cole says W&T Cole decided to wind down Cole of Orlando's business affairs since there was no longer any tax benefit to justify the costs of maintaining a Nevada partnership.[45] The Court accepts this rationale to close Cole of Orlando exists.

But closing the business and transferring the monies to exempt accounts are significantly different decisions that bear different legal consequences in this fraudulent transfer adversary proceeding. Cole's explanation that, given the repeal of Florida's intangibles tax, the tax benefits of maintaining a Nevada partnership no longer justified the costs only goes to the decision to dissolve Cole of Orlando. No fraud occurred in closing the corporation. And, had Cole transferred the monies into non-exempt Florida accounts when he dissolved Cole of Orlando, the Trustee would have no claim. So whether Cole of Orlando exists or was closed is irrelevant.

---

[43] Cole also suggests that he could not have intended to hinder, delay, or defraud his creditors because PRN did not make demand on him or his wife (or Cole of Orlando) for equitable contribution until June 5, 2014—more than three years after the transfers. *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at 4, ¶ 12. This argument, of course, overlooks the fact that just two weeks before the transfers, Cole received a notice from PRN notifying he was in default under his guaranty and owed PRN millions of dollars for amounts due under the Memorandum Agreement. *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, Ex. E. And the transfers were just months before Cole entered into the Settlement Agreement with PRN in which PRN agreed to forbear collecting the amounts due under the Memorandum Agreement and his guaranty. *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, Ex. J.

[44] *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶ 10.

[45] *Id.* at ¶ 12.

The issue is whether actual fraud occurred when Cole transferred $4 million from a non-exempt business entity into TBE accounts owned by Cole *and his wife as tenants by the entireties*. Property held by husband and wife as tenants by the entireties, such as Cole's TBE accounts with his wife, generally is exempt from the claims of creditors.[46] PRN cannot enforce its claim against Cole against property owned by Cole and his wife as tenants by the entireties.[47] Nothing in Cole's affidavit or in the record refutes the conclusion Cole transferred the monies to Cole and his wife as tenants by the entireties to keep Cole's share of the partnership out of the hands of PRN and his other creditors.

To conclude, the Court in this unusual case can conclude as a matter of law and on undisputed facts that Cole transferred the $4 million out of Cole of Orlando actually intending to hinder, delay, and defraud his creditors, primarily PRN. He transferred the funds to himself and his wife, he retained control over the monies, and he moved the monies to accounts attempting to exempt them from creditor claims. He was insolvent at the time of the transfers and moved the monies two weeks after receiving

---

[46] *Havoco of Am., Ltd. v. Hill*, 197 F.3d 1135, 1139 (11th Cir. 1999).

[47] *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 53 (Fla. 2001) ("[W]hen property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse"); *Meyer v. Faust*, 83 So. 2d 847, 848 (Fla. 1955) (holding that property owned by spouses as tenants by the entireties "cannot, prima facie, be reached to satisfy the individual judgment debt or other obligation of either party under the law of this state"). The reason TBE property cannot be used to satisfy a judgment creditor of one spouse alone is because "property held by husband and wife as tenants by the entireties belongs to neither spouse individually" but rather "each spouse is seized of the whole." *Beal Bank*, 780 So. 2d at 54.

notice he was in default under a guaranty pledged to PRN with an outstanding liability exceeding $12 million. These actions establish the requisite badges of fraud to support a ruling on summary judgment that the contested transfers were made with actual fraudulent intent.

### C.    Cole did not receive reasonably equivalent value for the transfers.

In *In re Rodriguez*, the Eleventh Circuit explained that the purpose behind voiding transfers not supported by reasonably equivalent value is to protect creditors against a debtor's assets from being depleted:

> The purpose of voiding transfers unsupported by "reasonably equivalent value" is to protect creditors against the depletion of a bankrupt's estate.[48]

With that in mind, the Eleventh Circuit explained that when a transfer confers an economic benefit on a debtor, it is not avoidable because the debtor's net worth has been preserved.[49] Here, Cole argues that the transfers are not avoidable because they conferred an economic benefit on him. He asserts creditors got more, not less, because of the $4 million transfers.

The starting point for Cole's argument is that his creditors had no way to collect on the funds held by Cole of Orlando.[50] So, when Cole moved the monies to the TBE accounts with his wife, Cole asserts creditors actually gained an asset. Cole's argument

---

[48] *Gen. Elec. Cap. Corp. of Tenn. (In re Rodriguez)*, 895 F.2d 725, 727 (11th Cir. 1990).

[49] *Id.*

[50] *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at 7 – 8.

relies on the indirect ownership of his partnership interest in Cole of Orlando.[51] Under Nevada law, the law governing Cole of Orlando, Cole's creditors could not reach the partnership's assets.[52] Creditors were limited to getting an ineffectual charging order.[53] By moving the funds from Cole of Orlando to the later TBE accounts owned by him and his wife, Cole posits the assets available to his creditors actually increased—not decreased.[54] Cole's faulty argument fails for many reasons.

First, Cole's creditors could have reached the funds held by Cole of Orlando via a charging order. Cole concedes as much, ultimately agreeing his creditors, such as PRN, could have gotten a charging order under Nevada law.[55] Although a charging order does not give a creditor a right to have a say in management, it does attach to the debtor's economic interests, including any right to distributions.[56] Because W&T Cole decided to dissolve Cole of Orlando in 2010,[57] Cole had a right to a distribution

---

[51] *Id.*

[52] *Id.* at 8 (citing Nev. Rev. Stat. § 87A.480).

[53] *Id.*

[54] *Id.*

[55] *Id.* at 8 (citing Nev. Rev. Stat. § 87A.480).

[56] *Schiff v. Pollard*, 280 So. 3d 251, 254 (La. Ct. App. 2019) ("We note, however, that collection procedures exist under Nevada law that allow for the seizure or the placing of a charging order on Mr. Schiff's partnership interest. Specifically, pursuant to Nevada law, Ms. Pollard may petition to make her Louisiana judgments executory and seek a charging order on Mr. Schiff's partnership interest. Charging orders against a judgment debtor's partnership interest may continue in effect and can affect the distributional interest of a partner, thereby allowing the creditor to pursue the collection of distributions.") (internal citations omitted).

[57] *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, ¶ 12.

of his capital account under the partnership agreement.[58] So a charging order would have attached to the distribution to Cole of his share of the nearly $4 million.

That leads to the second faulty premise—creditors benefitted by the funds transferred to Cole and his wife. His estate magically was increased. This argument, however, is premised on the monies being transferred directly to him, which they were not. Had Cole's share of the partnership assets been transferred directly to him, then he would be right: his estate would not have been depleted (it would have increased).

The monies representing Cole's capital account at Cole of Orlando, however, did not go directly to Cole; they went into joint accounts held by Cole and his wife as tenants by the entireties. Thus, the value of Cole's capital account became exempt and was put out of the reach of his creditors. Cole's estate was correspondingly depleted by the transfers from Cole of Orlando to Cole and his wife as tenants by the entireties.

So creditors lost access to the value of Cole's share of the assets in Cole of Orlando. They got nothing in exchange. And Cole put up a barrier to future creditor claims by parking the money in an exempt TBE account. He received no reasonable equivalent value in exchange for the transfer. This is a classic example of a constructive fraudulent transfer subject to avoidance because the creditor's estate was depleted because of the transfers.

### D.    PRN is a "triggering" creditor.

---

[58] *Id.* at Ex. A, Ex. 1, ¶ 18.

Bankruptcy Code § 544(b)(1) gives the Trustee the right to step into the shoes of an unsecured creditor and avoid any transfer that would be voidable under state law by a creditor holding an unsecured claim.[59] The Trustee, however, must prove the "existence of an actual creditor with an allowable claim against the debtor."[60] Cole argues that PRN cannot be the "triggering" creditor because Cole says he "has contended all along that he does not owe PRN any money and that PRN does not have a valid claim."[61]

As a factual matter, this simply is not true. Maybe, when Cole filed this bankruptcy case, he scheduled PRN's claim as "disputed."[62] But, as the Trustee points out, Cole acknowledged he owed a debt to PRN throughout this bankruptcy case. For instance, Cole admitted in the Settlement Agreement he owed more than $30 million to PRN.[63] He likewise has testified that he certified to a bank he owed PRN more than $30 million. So it is inaccurate to say Cole has contended all along that he does not owe PRN any money.

---

[59] *Luria v. Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg.)*, 2018 WL 6721987, *4 (Bankr. M.D. Fla. Sept. 28, 2018) ("That is, § 544(b) of the Bankruptcy Code allows a bankruptcy trustee to step into the shoes of an unsecured creditor and avoid any transfer 'that is voidable under applicable law by a creditor holding an unsecured claim.'") (quoting 11 U.S.C. § 544(b) (2011)).

[60] 5 Collier on Bankruptcy ¶ 544.06 (16th ed. 2020); *In re Grubbs Constr. Co.*, 321 B.R. 346 (Bankr. M.D. Fla. 2005) ("The burden is, therefore, on the trustee to demonstrate the existence of an actual creditor with a cause of action against the state which is viable under state law.").

[61] *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at 7 – 8.

[62] *Schedules A – J*, Main Case No. 6:15-bk-06458-KSJ, Doc. No. 14, Schedule F.

[63] *Trustee's Mot. for Partial Summ. J.*, Adv. Doc. No. 44, Ex. J.

More important, Cole's contention that PRN does not have an allowable claim is wrong as a legal matter. In a separate adversary proceeding after a multi-day trial, the Court has concluded that PRN has a significant claim against Cole, although the exact amount due remains unliquidated.[64] Under any analysis, the claim exceeds $400,000.[65] Even a nominal allowable claim will confer standing on the Trustee under § 544.[66] Because PRN has, at a minimum, a nominal claim, PRN is a "triggering" creditor for the Trustee's fraudulent transfer claims.

### E.   Cole converted non-exempt assets into exempt assets.

Cole lastly argues that the Trustee cannot prevail on her claim under § 222.30 of the Florida Statutes, which allows a creditor to avoid a debtor's fraudulent conversion of non-exempt assets into exempt assets, because Cole of Orlando's assets were effectively exempt before the transfers and effectively became non-exempt after.[67]

---

[64] In a separate adversary proceeding, Adv. No. 6:15-ap-00168-KSJ, PRN sued Cole to liquidate the debt he owes PRN, have that debt determined to be nondischargeable, and deny Cole his discharge. Simultaneously with the entry of this order, the Court is ruling the debt owed to PRN is dischargeable and Cole is entitled to a discharge. Although I declined to liquidate the *exact* debt owed to PRN because further evidence is needed, I concluded that "Cole undisputedly owed PRN a lot of money when he filed this bankruptcy case" and that "Cole is liable to PRN for some substantial amount."

[65] The Court's ruling is consistent with comments made by the Honorable Cynthia C. Jackson, who originally presided over this case. During an earlier hearing, in which Judge Jackson considered whether Cole had standing to object to the sale of his homestead, Judge Jackson observed that "although there appears to be a dispute regarding the correct amount of PRN's claim, there seems to be no serious argument that PRN is not owed millions of dollars." *Reply in Support of Mot. for Summ. J.*, Adv. Doc. No. 80, Ex. N.

[66] *The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 260 (5th Cir. 2010) ("In other words, an entire transfer may be set aside even though the creditor's claim is nominal.") (quoting 5 Collier On Bankruptcy ¶ 544.09[5] (15th ed. rev. 2009)).

[67] *Def.'s Resp. to Mot. for Summ. J.*, Adv. Doc. No. 70, at 12.

Cole's argument goes like this: Cole's revocable trust, not Cole personally, held the partnership interest in Cole of Orlando. Cole's creditors therefore have no claim against Cole of Orlando. And, even if they did, they were limited to an ineffectual charging order under Nevada law. Thus, Cole argues that before the transfers, his partnership interest essentially was exempt from his creditors.

And he argues his interest became non-exempt after the transfers even though the partnership assets were transferred to joint TBE accounts. Ordinarily, funds held in a TBE account would be exempt from Cole's creditors.[68] But joint creditors of a husband and wife can reach TBE assets.[69] PRN asserts a joint claim against Cole and his wife. Thus, Cole argues, by transferring the $4 million into the joint TBE accounts, he actually made it easier for PRN to reach the assets, if it proves this hotly contested joint claim. In that case, the assets would not be exempt, and the Trustee would lose on Count 4 because she cannot assert a claim under § 222.30 of the Florida Statutes.

Cole has it backwards.

Cole's interest in Cole of Orlando's assets never was exempt from his creditors. Assuming Cole's creditors were limited to a charging order, the charging order still

---

[68] *In re Cooper*, 2018 WL 11206027, at *2 (Bankr. M.D. Fla. 2018) ("Under Florida law, property held as TBE belongs to neither spouse individually. As a result, TBE property 'is exempt from process to satisfy debts owed to individual creditors of either spouse.' TBE property, however, 'is not exempt from process to satisfy joint debt of both spouses.'") (quoting *In re Smith*, 2016 WL 675806, at *1 (Bankr. M.D. Fla. Feb. 18, 2016)); *In re Daniels*, 309 B.R. 54, 56 (Bankr. M.D. Fla. 2004) ("Accordingly, property held as tenants by the entirety can only be reached to satisfy a husband and wife's joint debts and cannot be reached to satisfy the obligations of only one spouse.").

[69] *In re Cooper*, 2018 WL 11206027, at *2 (Bankr. M.D. Fla. 2018) ("TBE property, however, 'is not exempt from process to satisfy joint debt of both spouses.'") (quoting *In re Smith*, 2016 WL 675806, at *1 (Bankr. M.D. Fla. Feb. 18, 2016).

would give them a right to any distributions from Cole of Orlando.[70] Because Cole of Orlando was being wound down, Cole had a right to a distribution of his share of the partnership assets.[71]

The fact Cole held his limited partnership interest in Cole of Orlando through his revocable trust is irrelevant. Cole, in his own affidavit, concedes holding his limited partnership interest through his revocable trust did not exempt it from his creditors:

> Although it was intended for the limited partnership interests to be held as tenants-by-the-entirety (TBE), I have learned that the Cole Trust held a 49.5% limited partnership interest and the Terre Trust held a 49.5% limited partnership interest. However, the partnership was at all times considered by my wife and I to be a TBE asset and was accounted for tax purposes as a TBE asset.[72]

The reason Cole intended—albeit unsuccessfully—for his limited partnership interest to be held as tenants by the entireties is because it is not otherwise exempt if held by his self-settled revocable trust. So the nearly $ 4 million transferred to Cole and his wife was not exempt before the transfers.

Nor did it become non-exempt after the transfers. Cole's sole argument is that the funds are non-exempt because PRN *claims* to be a joint creditor. While that may

---

[70] *Schiff v. Pollard*, 280 So. 3d 251, 254 (La. Ct. App. 2019) ("We note, however, that collection procedures exist under Nevada law that allow for the seizure or the placing of a charging order on Mr. Schiff's partnership interest. Specifically, pursuant to Nevada law, Ms. Pollard may petition to make her Louisiana judgments executory and seek a charging order on Mr. Schiff's partnership interest. Charging orders against a judgment debtor's partnership interest may continue in effect and can affect the distributional interest of a partner, thereby allowing the creditor to pursue the collection of distributions.") (internal citations omitted).

[71] *Suppl. Cole Aff.*, Adv. Doc. No. 70, at Ex. A, Ex. 1, ¶ 18.

[72] *Id.* at Ex. A, ¶ 5.

be so, Cole offers no record evidence that PRN *has* a valid claim against Cole's wife. Nor does that argument go to any other creditor without a joint claim. Therefore, the funds are now exempt.

The Trustee has established all elements needed to show that the $4 million transfers from Cole of Orlando constitute a fraudulent conversion of non-exempt assets into exempt assets under § 222.30 of the Florida Statutes. The Chapter 7 Trustee's Motion for Partial Summary Judgment is **GRANTED**.

## III.    Defendants' Motion for Partial Summary Judgment

Besides the $4 million in transfers from Cole of Orlando, the Chapter 7 Trustee in her Complaint also seeks to avoid a transfer of 3,000 shares of Google stock to Cole's wife in 2010. But the Trustee does not seek summary judgment on this transfer; however, Mrs. Cole has moved for partial summary judgment[73] arguing this claim to avoid the Google stock transfer fails because it is time barred.[74]

No party disputes the Google stock was transferred to Cole's wife on February 10, 2010. Ordinarily, parties must assert a claim under § 726.105(1)(a), § 726.105(1)(b), or § 726.106 of the Florida Statutes within four years of the transfer.[75] Here, the Complaint was filed outside of this time period.[76] But under § 726.110 of the Florida

---

[73] *Def.'s Resp. to Mot. for Summ. J. & Cross Mot. for Summ. J.*, Adv. Doc. No. 74 at 14 – 16.

[74] *Id.*

[75] § 726.110(1) – (2), Fla. Stat.

[76] The adversary complaint was filed on September 18, 2017, which is more than seven years after the Google stock was transferred. But, so long as the state law statute of limitations did not expire prepetition, Bankruptcy Code § 546(a) gives a Trustee two years from the petition date to bring a

Statutes, the four-year limitations period for claims brought under § 726.105(1)(a) may be extended for up to one year after the transfer was or reasonably could have been discovered by the claimant.[77]

The Trustee claims that the Google stock transfer was not—and could not reasonably have been—discovered until June 15, 2014.[78] In support of that argument, the Trustee submitted a declaration from Nancy Rossman, PRN's representative.[79] In her declaration, Rossman testifies that on June 15 – 16, 2014, she had a 7-hour telephone call with Cole, during which Cole revealed to her he transferred $4 million to his wife's account at Charles Schwab.[80] Within eight months of that conversation, Rossman and PRN sued Cole in state court to avoid the transfer of the $4 million.[81]

Cole disputes Rossman's version of the events. He claims he mentioned no fraudulent transfers during the call.[82] What's more, Cole claims "PRN and Rossman were *fully aware* that Cole of Orlando was being wound down before the end of 2011 and that Cole specifically informed Rossman and discussed it with her on several

---

fraudulent transfer claim under Bankruptcy Code § 544. Considering Court-approved extensions of the § 546 two-year limitations period, the Trustee's fraudulent transfer claim as to the Google stock is timely under § 546(a) so long as the state law statute of limitations period had not expired prepetition. That issue, as discussed below, turns on when PRN actually discovered or reasonably could have discovered the Google stock transfer.

[77] § 726.110(1), Fla. Stat.

[78] *Trustee's Resp. to Cross Mot. for Summ. J.*, Adv. Doc. No. 81, at 4, ¶ 13.

[79] *Id.* at Ex. P.

[80] *Id.* at Ex. P, ¶ 9.

[81] *Trustee's Resp. to Cross Mot. for Summ. J.*, Adv. Doc. No. 81, Ex. Q, ¶¶ 271 – 77.

[82] *Suppl. Aff. of William W. Cole, Jr.,* Adv. Doc. No. 91, Ex. A., ¶ 31.

occasions," including discussing that distributions were being made from Cole of Orlando's account with Charles Schwab.[83] And even if PRN had not actually known of the transfers in 2011, Cole argues it reasonably should have because of the extensive financial reporting Cole had to provide PRN under the parties' Settlement Agreement.[84]

On this record, the Court must decline Mrs. Cole's request for summary judgment. Both parties agree that the timeliness of the Trustee's claim to avoid the transfer of the Google stock turns on when Rossman (as PRN's representative) first learned (or should have learned) of the transfer. There is a genuine issue of material fact when Rossman first learned (or should have learned) of the transfer and, therefore, whether the claim to avoid the Google stock transfer is time barred. Mrs. Cole's motion for partial summary judgment is **DENIED**.

## IV.    Conclusion

The Chapter 7 Trustee acknowledges an issue of fact exists over the amount of Cole's interest in the nearly $4 million transferred to joint accounts held by him and his wife as tenants by the entireties. The value of Cole's interest is reserved for trial, as is the timeliness of the Trustee's claim to avoid the transfer of the Google stock in 2010.

---

[83] *Id.* at Ex. A, ¶ 21.

[84] *Def.'s Reply to Trustee's Resp. to Cross Mot. for Summ. J.*, Adv. Doc. No. 91, at 4, ¶ 12.

But, as to the other issues, the Trustee is entitled to partial summary judgment on Counts 1 – 4. To the extent the funds ultimately are attributable to Cole's interest in Cole of Orlando, the $4 million in transfers from Cole of Orlando to the joint TBE accounts held by Cole and his wife are avoided as both actual and constructively fraudulent transfers under Chapter 726 of the Florida Statutes and as an improper conversion of non-exempt into exempt assets under § 222.30 of the Florida Statutes. The transfers were made by Cole, as transferor, with the actual intent to hinder, delay, or defraud PRN. Cole and his creditors did not receive reasonably equivalent value in exchange for the transfers. And by transferring the nearly $4 million to joint accounts held by him and his wife as tenants by the entireties, Cole converted non-exempt assets into exempt assets. Trustee's Motion for Partial Summary Judgment is **GRANTED**.

A further pretrial conference to set trial dates on the remaining factual disputes is scheduled via ZOOM for **11:30 a.m. on January 14, 2021**.

###

Attorney James A. Timko will serve a copy of this Memorandum Opinion on interested parties who do not receive service by CM/ECF and will file a proof of service within 3 days of entry of the Opinion.