ORDERED.

**Dated:  August 19, 2021**

Karen S. Jennemann
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
### www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| William W. Cole, Jr., | ) | Case No. 6:15-bk-06458-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Lori Patton, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 6:17-ap-00112-KSJ |
| | ) | |
| William W. Cole, Jr., Terre Cole, | ) | |
| ColeDev, LLC, and ColeDev | ) | |
| Construction and Development, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION ON COUNT 6</u>

In 2012, William W. Cole, Jr. ("Debtor"), his wife, and his son formed

ColeDev, LLC ("ColeDev"), as a small, closely held S-Corporation, to conduct their

construction business.[1] Debtor and his wife, Terre Cole, transferred approximately $1.18 million to ColeDev to fund its initial operations. Shortly after filing this Chapter 7 bankruptcy case on July 27, 2015, Debtor and Terre Cole received approximately $1 million (the "Transfers") from ColeDev.[2] In Count 6 of the Complaint,[3] the Plaintiff and Chapter 7 Trustee, Lori Patton, seeks the turnover of these Transfers under § 542 of the Bankruptcy Code.[4] The issue is whether these post-petition payments constitute repayments of a shareholder loan or a return of a capital contribution.[5] I find for the Defendants,[6] concluding the Transfers repaid capital contributions and are not assets in this bankruptcy estate.

Whether the Transfers repay a loan or capital contributions depends on whether the advances initially made by the Debtor and his wife, Terre Cole (collectively the "Coles") are considered debt or equity.[7] Generally, entrepreneurial shareholders invest personal money into risky business ventures hoping to succeed while lenders seek a more reliable return with specific terms of repayment.[8] When determining whether an advance is considered debt or equity, courts look to the actual manner, not the form,

---

[1] The Debtor, Terre Cole, and Adam Cole formed ColeDev on October 3, 2012. Joint Stipulation of Facts ("Joint Stip.") ¶ 1-3, Doc. No. 135.
[2] The exact stipulated amount is $1,000,875.84. Joint Stip. ¶ 11, Doc. No. 135.
[3] Doc. No. 1. All "Doc. No." citations refer to pleadings filed in Adversary Proceeding 6:17-ap-00112-KSJ unless otherwise noted. A trial on Count 6 was held on July 9, 2021. The trial on all remaining issues in this adversary proceeding is scheduled for October 18, 2021.
[4] All references to the Bankruptcy Code refer to 11 U.S.C. § 101, *et. seq.*
[5] Trustee's Statement of Issues, Doc. No. 139.
[6] The Defendants listed in the Complaint include Debtor, Terre Cole (Debtor's wife), ColeDev, and ColeDev Construction and Development, LLC.
[7] *Lane v. United States (In re Lane)*, 742 F.2d 1311, 1314 (11th Cir. 1984).
[8] *Id.*

in which the parties intended to structure a specific advance.[9] "[A] court is not required to accept a party's characterization of an advance as a loan, but may recast the advance as a contribution to capital."[10] In *Lane v. United States (In re Lane)*,[11] the Eleventh Circuit analyzed these thirteen factors to determine if an advance is debt or equity. They are:

> (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a fixed maturity date; (3) the source of payments; (4) the right to enforce payment of principal and interest; (5) participation in management flowing as a result; (6) the status of the contribution in relation to regular corporate creditors; (7) the intent of the parties; (8) 'thin' or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) source of interest payments; (11) the ability of the corporation to obtain loans from outside lending institutions; (12) the extent to which the advance was used to acquire capital assets; and (13) the failure of the debtor to repay on the due date or to seek a postponement.[12]

The Coles have owned a 99% membership interest as tenants by the entirety[13] in ColeDev, a Florida limited liability company, since its inception in 2012. ColeDev functioned as the Coles' primary operating company where money flowed freely between the Coles and ColeDev.[14] The Coles voluntarily advanced approximately $1.18 million[15] of their own money to fund ColeDev's initial operations.[16] Debtor filed

---

[9] *Cary v. Vega (In re Vega)*, 503 B.R. 144, 151 (Bankr. M.D. Fla. 2013) (citing *Celotex Corp. v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 176 B.R. 223, 248 (M.D. Fla. 1994)).

[10] *Id.* (alteration in original) (quoting *In re Hillsborough Holdings Corp.*, 176 B.R. at 248).

[11] *In re Lane*, 742 F.2d 1311.

[12] *Id.* at 1314-15 (quoting *Est. of Mixon v. United States*, 464 F.2d 394, 402 (5th Cir. 1972)).

[13] The remaining 1% membership interest is owned by the Coles' son, Adam Cole. Joint Stip. ¶¶ 2-3, Doc. No. 135.

[14] Joint Stip. ¶ 7, Doc. No. 135.

[15] The precise amount the Coles transferred to fund ColeDev was not determinable, instead the Court examined the register provided in Trustee's Exhibit 9, Doc. No. 133-9, and compiled the amounts transferred to the ColeDev Bank account from October 2012 through December 2013.

[16] Trustee's Ex. 40, Doc. No. 134-15.

Case 6:17-ap-00112-KSJ    Doc 164    Filed 08/19/21    Page 4 of 9

for Chapter 7 Bankruptcy on July 27, 2015.[17] After the bankruptcy filing date, ColeDev paid the Transfers, a stipulated amount of $1,000,875.84, to the Coles or another closely held family business, ColeDev Construction and Development, LLC.[18]

Applying the *In re Lane* factors, I conclude the Transfers were repayments of equity contributions.

- As to the first factor, the advances were not evidenced by a promissory note, security agreement, or mortgage, weighing in favor these advances are not debts.

- Second, the advances do not have a fixed maturity date and repayment is linked to the profitability of the company. Debtor testified he made the Transfers only when ColeDev was profitable.

- The third factor analyzes the source of payments. "If repayment is possible only out of corporate earnings, the transaction has the appearance of a contribution of equity capital, but if repayment is not dependent upon earnings, the transaction reflects a loan to the corporation."[19] Here, the advances did not accrue interest, and the Coles made the advances without seeking interest payments. Any repayment came from the company's

---

[17] Voluntary Pet. under Chapter 7, *In re Cole*, No. 6:15-bk-06458-KSJ (Bankr. M.D. Fla. July 27, 2015), Doc. No. 1.
[18] Joint Stip. ¶ 7, Doc. No. 135. Debtor testified that ColeDev paid $750,000 to ColeDev Construction and Development, LLC, which Terre Cole was a 95% owner of. The remainder of the transfers were made to the Coles' joint bank account.
[19] *Stinnett's Pontiac Serv., Inc. v. Comm'r*, 730 F.2d 634, 638 (11th Cir. 1984) (quoting *Est. of Mixon*, 464 F.2d at 405).

earnings conditioned on whether the company was profitable. This factor indicates that the advances were contribution to capital, not debt.

- Fourth, the Coles had no legal right to enforce repayment of the advances because no enforceable agreement exists. Further, ColeDev's operating agreement states that, if the company will borrow money, it needs to sign a formal resolution. No such resolution was signed. Yet, ColeDev knew the proper process to follow in loans extended by CNL Bank,[20] Seaside National Bank,[21] and Terre Cole,[22] which were accompanied by formal resolutions, promissory notes, and related loan documentation.

- The fifth factor supports classifying these advances as capital contributions. The Coles provided the advances and already owned 99% of the company as Tenants by the Entirety. The Coles did not receive a greater interest of the company for their advances.

- The sixth factor is irrelevant as no agreements regarding the subordination of the advances exist in relation to other corporate creditors.

- Seventh, the parties intended these advances to be capital contributions. Debtor and Caryn Winters, ColeDev's accountant,[23] testified these advances

---

[20] The documents regarding the CNL Bank loans were not admitted into evidence, but both Debtor and Ms. Winters testified to the existence of these loan documents.

[21] Seaside loaned ColeDev money as evidenced by a mortgage agreement with Seaside. Defs.' Ex. 7, Doc. No. 129-7. The mortgage was refinanced and evidenced by written agreement. Defs.' Ex. 8, Doc. No. 129-8.

[22] Terre Cole loaned ColeDev $600,000 with a 9% per annum interest rate as evidenced by a promissory note. Defs.' Ex. 5, Doc. No. 129-5.

[23] ColeDev hired Ms. Winters in the Spring of 2015. She continues to perform bookkeeping services for ColeDev.

were capital contributions. Circumstantially, the 2012 and 2013 tax returns and the July 2015 balance sheet treated the advances as capital contributions.

- The eighth factor supports classifying the advances as capital contributions. Debtor credibly testified no other source for capital infusion into his company existed, and CNL Bank would not have loaned the money without the advances from the Coles.

- Ninth, the funds advanced were proportional to the ownership of the company, supporting classifying the advances as capital contributions. "If advances are made by stockholders in proportion to their respective stock ownership, an equity capital contribution is indicated."[24] The Coles owned 99% of the company as Tenants by the Entirety and provided the entire advance.

- Tenth, no interest payments were required on the advances, which further supports classifying the advances as capital contributions.

- Eleventh, the purpose of this inquiry is to "test whether the shareholder contributors acted in the same manner toward their corporation as ordinary reasonable creditors would have acted."[25] Debtor testified the company would not have received the loans without the advances, giving further

---

[24] *Stinnett's Pontiac Serv.*, 730 F.2d at 639 (quoting *Est. of Mixon*, 464 F.2d at 409).
[25] *Id.* at 640 (quoting *Est. of Mixon*, 464 F.2d at 410).

weight to classifying the advances as capital contributions because no reasonable creditors would provide financing.

- Twelfth, as stated in the previous factor, Debtor testified that contributions were used to obtain other financing sources.

- Thirteenth, there were no due dates associated with the advances which supports a conclusion the advances were capital contributions.

These factors support treating the Transfers as repayments of capital contribution and not a shareholder loan. After a careful review of the pleadings, trial testimony, and the factors in *In re Lane*, I conclude the monies advanced by Debtor directly to ColeDev constitute capital contributions, not a loan.

In response, the Trustee relies on two pieces of evidence to support her argument that the advances were loans. First, she highlights an internal accounting register titled "Shareholder Loans Payable"[26] created by Ms. Winters in 2015, long after the advances were made. The accounting register tracks ColeDev's cash inflows and outflows from its inception through the filing date.[27] Ms. Winters credibly testified this title on the register was nonconsequential. She and the Coles always assumed the advances were capital contribution. As she colorfully stated, Adam Cole could just as easily titled the category "Happy Birthday" because the title was just a place holder. I

---

[26] Trustee's Ex. 9, Doc. No. 133-9.
[27] Ms. Winters testified that Adam Cole prepared the label for the register and has minimal bookkeeping experience.

conclude this title—Shareholder Loans Payable—is meaningless and does not reflect the intention of the parties to treat the advances as capital contributions.

Second, the Trustee relies on ColeDev's 2014 and 2015 tax returns that treat the repayment of the monies as repayments of shareholder loans under a loan basis.[28] This is contrary to ColeDev's 2012 and 2013 tax returns where ColeDev treated the advances as capital contributions under a stock basis.[29] So, ColeDev was inconsistent in its treatment of the advances in the four years it operated before Debtor filed this bankruptcy case—in 2012 and 2013, when the advances actually occurred, ColeDev treated the advances as capital contributions. In 2014 and 2015, with a new tax preparer, they listed the advances as shareholder loans. Although this differing treatment does give pause, the Court concludes that because virtually every other factor of *In re Lane* posits the advances were capital contribution and the Transfers were repayment of capital, this one inconsistency cannot rebut the Coles' intent that the advances were capital contributions.

The Transfers were repayments of capital contributions made by the Coles to ColeDev. They are not included as assets in this bankruptcy case. Consistent with this Memorandum Opinion, a separate Partial Final Judgment for the Defendants on Count 6 shall issue.

###

---

[28] Trustee's Ex. 11, Doc. No. 133-11; Trustee's Ex. 12, Doc. No. 133-12.
[29] Defs.' Ex. 3, Doc. No. 129-3; Defs.' Ex. 4, Doc. No. 129-4.

Attorney Kenneth D. Herron, Jr. will serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.